UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES DAVIDSON and CD & PWS ENTERPRISES, INC., <br><br> Plaintiff(s), <br><br> v. <br><br> CONOCOPHILLIPS CO. AND DOES 1-100, <br><br> Defendant(s). | No. C08-1756 BZ <br><br> **ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On March 5, 2008, plaintiffs Charles Davidson and CD & PWS Enterprises, Inc. ("Davidson", collectively "plaintiffs") filed suit against defendant ConocoPhillips Co. ("defendant"), for breach of contract; intentional misrepresentation; negligent misrepresentation; and violation of Cal. Bus. & Prof. Code § 1700 *et seq.*[1]  Before the Court is defendant's motion for summary judgment.  For the reasons set forth below, defendant's motion is **GRANTED IN PART AND DENIED IN PART.**

---

[1] All parties have consented to my jurisdiction, including entry of final judgment, pursuant to 28 U.S.C. § 636(c) for all proceedings.

1

It is undisputed that beginning in 2001, plaintiffs operated a Union 76 station in San Ramon, California as a franchisee of defendant.  The franchise relationship was governed by a "Dealer Station Lease and Motor Fuel Agreement" ("Franchise Agreement"), as well as two subsequent renewal agreements.  On January 20, 2001, the parties signed a Franchise Agreement for a three year term to expire on January 31, 2004.[2]  The Franchise Agreement provided that it could only be modified by a writing signed by both parties.

On January 8, 2003, Davidson received a letter from defendant setting forth a rent reimbursement program for improving gas station service bays.[3]  The letter informed dealers that if they elected to invest their capital "for the betterment of a service station's operations", they would be "eligible for an investment allowance to recoup a portion or all of their investment depending on project scope." (Davidson Depo. Ex. 7.)[4]

Upon receiving this letter, Davidson told David Vann ("Vann"), the ConocoPhillips Wholesale Territory Representative for the San Ramon area, that he wanted to build

---

[2] The parties executed two renewals of the Franchise Agreement.  One renewal was for the period beginning on February 1, 2004 and ending January 21, 2007 and the other was for the period beginning on February 1, 2007 and ending January 31, 2010.

[3] The letter was a form letter sent to all western United States dealers.

[4] Defendant's objections to the January 8, 2003 letter are **OVERRULED.**

1  a car wash at his San Ramon station.[5]

2  On July 1, 2003, Davidson met with Vann and David Scarlet
3  ("Scarlet"), ConocoPhillips' Regional Construction Engineer,
4  to discuss the construction of a car wash at plaintiffs' San
5  Ramon station.  The details of this conversation are disputed;
6  plaintiff asserts that Vann told him that the car wash
7  installation project fell within the new rent program outlined
8  in the January 8 letter, while defendant asserts that neither
9  Vann nor Davidson discussed rent reimbursement for the car
10 wash project at this meeting.

11  On July 24, 2003, Davidson wrote Scarlet that he intended
12 to build a car wash at the San Ramon station, and believed
13 that he would be entitled to rent reimbursement for the cost
14 of the car wash project.  According to defendant, neither
15 Scarlet nor Vann received plaintiff's July 24, 2003 letter.

16  On July 25, 2003, Scarlet sent a letter to Davidson
17 titled "Initial Review and Approval", which approved
18 plaintiffs' initial plans for the construction of a car wash,
19 but was silent with regard to rent reimbursement.  The letter
20 also stated that prior to beginning installation of the car
21 wash, Davidson would be required to submit four additional
22 pieces of information.[6]

---

[5] Defendant's objections to Davidson's discussion with Vann are **OVERRULED**.

[6] This information included, among other things, a copy of the installing contractor's liability insurance certificate and business license, as well as a drawing detailing the installation location and any potential utilities interference information.  Defendant's objection to plaintiff's assertion that Scarlet "responded" to defendant's July 24 letter is **SUSTAINED**.  All other objections to Scarlet's letter are

3

1   Over the next several years, Davidson worked with the
2   City of San Ramon to obtain use permits, and also obtained a
3   loan to finance the installation of the car wash.  Plaintiffs
4   kept defendant appraised of the process of obtaining permits
5   for the car wash.[7]  Plaintiffs finally received city approval
6   of the car wash in January 2006 and a loan for a lease on the
7   necessary equipment for the car wash in February 2006.[8]

8   In March 2006, Davidson met in person with Greg
9   Pellegrino ("Pellegrino"), ConocoPhillips' Sales and
10  Operations Manager for the San Ramon area, to discuss
11  confirmation of the rent reduction as consideration for the
12  capital improvement of the car wash.  At that time, Pellegrino
13  told Davidson that he would let him know in a few days whether
14  Davidson would be reimbursed for the car wash project.
15  (Davidson Depo. 123:14.)  In April 2006, Davidson and Vann
16  exchanged a series of emails.  In these emails, Davidson
17  informed Vann that his first loan payment for the equipment
18  lease was coming due, and requested rent reimbursement from
19  defendant.  Vann responded to Davidson's emails by stating
20  that he was "working on the issue" and that he would have

---

**OVERRULED.**

[7]  Defendant's objection to Davidson's speculation that it received updates about the car wash project from the City of San Ramon is **SUSTAINED**.  Defendant's objections regarding whether defendant received updates about the car wash project from plaintiffs are **OVERRULED**.

[8]  At this time, the first renewal of the Franchise Agreement had been executed, and was to take effect on February 1, 2006.

4

additional information for Davidson by May 1.[9] (Davidson Decl. Ex. 8.).

On June 3, 2006, Davidson sent another email to Vann, which stated that he expected to receive his permit from the City of San Ramon that week, and that he intended to begin construction of the car wash immediately. The email asked whether Davidson needed to provide any additional information to defendant before starting construction. Davidson also inquired about the "reimbursement issue." Vann responded that "you should have some communication . . . soon" about the reimbursement issue. Vann also asked whether Davidson had sent defendant all of the necessary paperwork. Davidson responded by faxing defendant the remaining paperwork.

On June 14, 2006, defendant sent a letter to plaintiffs and informed them that it did not currently have a program to assist franchisees who made improvements to their stations. Having already paid for the car wash equipment, which was to be delivered to the station for installation in July, plaintiffs installed the car wash, at a cost of $455,000, despite receiving this letter.[10] Plaintiffs operated the car wash from December 2006 until October 2007, when they eventually lost their Union 76 San Ramon station, as well as another Union 76 station they operated in Pleasant Hill.[11]

---

[9] Defendant's objections to Exhibit 8 are **OVERRULED**.

[10] Defendant's objections to this evidence are **OVERRULED**.

[11] Defendant's objections to this evidence are **OVERRULED**.

1    In its motion, defendant contends that 1) the 2007
2 renewal of the Franchise Agreement contains an integration
3 clause which precludes plaintiffs from alleging there was an
4 earlier oral contract; 2) the parol evidence rule bars the
5 introduction of any oral modifications of the written
6 Franchise Agreement; 3) the statute of frauds bars the
7 introduction of the alleged oral modification of the Franchise
8 Agreement; 4) the oral modification is barred by the provision
9 of the Franchise Agreement that expressly prohibits oral
10 modifications; 5) the oral modification fails as uncertain;
11 and 6) plaintiffs cannot raise a triable issue of fact
12 regarding their misrepresentation and Cal. Bus. & Prof. Code
13 claims because, *inter alia*, plaintiffs cannot prove that
14 defendant made a "knowingly false" representation.[12]

15    I begin with the issue whether an oral modification of a

---

[12] Defendant also argues that plaintiff Davidson has no standing to assert any of the claims in the complaint because Davidson did not individually lease or operate the San Ramon station. While the Court agrees with defendant that Davidson does not have standing to assert the breach of contract claim, (*see* Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 439 (1979)), Davidson does has standing to assert his misrepresentation claims, as these claims are not derivative. An action is derivative "'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'" Jones v. H.F. Ahmanson & Co., (1969) 1 Cal.3d 93, 106 (1969) (citing Gagnon Co., Inc. v. Nevada Desert Inn, Inc., 45 Cal.2d 448, 453 (1955). Here, Davidson "does not seek to recover on behalf of the corporation for injury done to the corporation" by defendant. Jones, 1 Cal.3d at p. 107. Instead, "the gravamen of [his] cause of action is injury to [himself] . . . ." Id.; *see also* Sutter v. General Petroleum Corp., 28 Cal. 2d 525, 530 (1946) (a stockholder may sue individually "where the action is based . . . on a fraud affecting him directly."). Thus, defendant's motion for summary adjudication based on Davidson's lack of standing is **DENIED**.

6

written agreement is allowable in the face of a provision requiring that any modification be in writing and be signed by both parties. The written Franchise Agreement (as well as both renewals), contains the following provision: "The terms and conditions can only be changed by a document signed [by both parties]." (Davidson Depo. Exh. 1.)

Section 1698 of the California Civil Code governs. As amended[13], section 1698 provides, in part, as follows: "(a) A contract in writing may be modified by a contract in writing. (b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. (c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration." Cal. Civ. Code § 1698.

Section 1698(b) allows modification of a written contract by an oral agreement to the extent the oral agreement is executed. This is true regardless of whether the written agreement contains a clause expressly prohibiting oral modification. *See, e.g.*, Miller v. Brown, 136 Cal. App. 2d 763, 775 (1955) (". . . an executed oral agreement may alter an agreement in writing, even though, as here, the original contract provides that all changes must be approved in

---

[13] "Before the amendment of Civil Code section 1698 in 1976, California law offered inadequate guidance to parties who found it necessary to make an enforceable oral modification of written contracts (other than for the sale of goods), and the code was subject to a number of judicial interpretations." Coldwell Banker & Co. v. Pepper Tree Office Center Associates, 106 Cal. App. 3d 272, 279 (1980) (citing 8 Pacific L.J. 194 (1977)).

7

1  writing. This is so because the executed oral agreement may
2  alter or modify that provision of the contract as well as
3  other portions." (citing Heple v. Kluge, 114 Cal. App. 2d 473
4  (1952); Nuttman v. Chais, 101 Cal. App. 2d 476 (1952) (fully
5  executed oral modification); D. L. Godbey & Sons Const. Co. v.
6  Deane, 39 Cal.2d 429 (1952)); *see also* Cal. Law Revisions
7  Com., 9 West Ann. Civ. Code (1985 ed.) § 1698 p.722 ("The
8  introductory clause of subdivision (c) recognizes that the
9  parties may prevent enforcement of *executory* oral
10 modifications by providing in the written contract that it may
11 only be modified in writing. See Com. Code § 2209(2) for a
12 comparable requirement. Such a provision would not apply to an
13 oral modification valid under subdivision (b).") (emphasis
14 added).

15    Importantly, "'[e]xecuted' in § 1698(b) has the normal
16 meaning of that term in contract law. That is, the agreement
17 must have been fully performed." Fanucchi & Limi Farms v.
18 United Agri Prods., 414 F.3d 1075, 1080-81 (9th Cir. 2005)
19 (citing Lockheed Missiles & Space Co. v. Gilmore Indus., 135
20 Cal. App. 3d 556, 559, 185 Cal. Rptr. 409 (1982)); *see also*
21 Cal. Civ. Code § 1661 ("An executed contract is one, the
22 object of which is fully performed."); Newman v. Albert, 170
23 Cal. App. 2d 678 (" . . . an executed oral agreement will
24 serve as a modification or release of a written agreement . .
25 . without regard to the presence or absence of a
26 consideration.") (citations omitted). "Accordingly it is well
27 settled that in order to be 'executed' an agreement must be
28 *fully performed on both sides*." Lockheed Missiles & Space

Co., 135 Cal. App. 3d at 559 (citations omitted) (emphasis added). Because plaintiffs argue that defendant breached its obligation under the oral agreement by failing to perform, plaintiffs' argument must fail, as the requirements of subsection (b) have not been satisfied. *See* Xnergy v. Hess Microgen, LLC, No. 06-343, 2007 U.S. Dist. LEXIS 63812 at *11 (S.D. Cal. August 29, 2007); *see generally* Coldwell Banker & Co., 106 Cal. App. 3d at 280-81 *overruled on other grounds in* Barrett v. Bank of America, 183 Cal. App. 3d 1362, 1371 (1986).[14]

Section 1698(c) allows oral modification of a written contract under two conditions: first, the oral modification must be supported by new consideration and second, the written agreement must not have a clause that expressly prohibits oral modifications. *See* Conley v. Matthes, 56 Cal. App. 4th 1453, 1464 (1997) ("Oral modifications of written agreements are precluded only if the written agreement provides for written modification.") (citing Marani v. Jackson, 183 Cal. App. 3d

---

[14] There are a handful of cases that have found that where one party to a contract fully performs according to an oral modification supported by new consideration, the court may consider the parol contract as a valid modification. *See, e.g.*, MacIsaac & Menke Co. v. Cardox Corp., 193 Cal. App. 2d 661, 670 (1961) ("An oral agreement fully executed by one party, if supported by consideration, will constitute a valid modification of a prior written agreement."); Kelley v. R. F. Jones Co., 272 Cal. App. 2d 113 (1969); Sanders Construction Co. v. San Joaquin First Fed. Sav. & Loan Assc'n, 136 Cal. App. 3d 387, 396 (1982). The cases that so hold rely on D. L. Godbey & Sons Const. Co. v. Deane, 39 Cal.2d 429, 433 (1952), which, while not expressly overruled, has been superseded by the 1976 amendments to section 1698. Moreover, the cases are distinguishable because they involved oral modifications of written agreements that did not contain provisions that expressly mandated that all modifications be in writing.

695, 704 (1986) (noting that oral modification of a written contract is allowed only if "the written contract does not contain an express provision requiring that modification be in writing")).[15]

It is apparent from the provision of the Franchise Agreement quoted above that the agreement expressed a clear intent to preclude oral modifications of the kind claimed by plaintiffs. Plaintiffs therefore cannot rely on § 1698(c) in support of their oral modification claim.

In a further attempt to enforce the alleged oral agreement, plaintiffs argued for the first time during the hearing that 1698(d) applies to this dispute, asserting the doctrines of waiver and independent collateral oral agreement. Section 1698(d) provides "[n]othing in this section precludes in an appropriate case the application of rules of law concerning . . . , waiver of a provision of a written contract, or oral independent collateral contracts." Cal. Civ. Code § 1698(d).

---

[15] Plaintiffs' attempt to distinguish <u>Marani</u> is unavailing. The court's discussion in <u>Marani</u> that focused on whether new consideration had been provided to support the alleged oral modification was an alternative argument set forth by the court, not its primary focus. See <u>Marani</u>, 183 Cal.App.3d at 705-06 ("The instant contract contains the identical provision precluding modification other than in writing . . . [t]his alone would require exclusion of the oral agreement.") Moreover, plaintiffs' reliance on <u>Mechanical Contractors Assn. v. Greater Bay Area Assn.</u>, 66 Cal. App. 4th 672 (1998), for the proposition that oral modifications of written contracts are permissible even if the written agreement specifies that modifications must be in writing, is misplaced. <u>Mechanical Contractors Assn.</u> interpreted the written collective bargaining agreement at issue in that case under federal law, and therefore did not apply the provisions of Cal. Civ. Code § 1698. <u>Id.</u> at 686.

1    Under the plain language of subdivision (d) of section
2    1698, a modification of a written contract may result when a
3    party to that contract has waived one or more of the contract
4    provisions.  "The term 'waiver' is sometimes used
5    indiscriminately to refer to the doctrine of waiver, and the
6    distinct but similar doctrine of estoppel. Waiver refers to
7    the act, or the consequences of the act, of one side. Waiver
8    is the intentional relinquishment of a known right after full
9    knowledge of the facts and depends upon the intention of one
10   party only. Waiver does not require any act or conduct by the
11   other party. Thus, the pivotal issue in a claim of waiver is
12   the intention of the party who allegedly relinquished the
13   known legal right."  Old Republic Ins. Co. v. FSR Brokerage,
14   Inc., 80 Cal. App. 4th 666, 678 (2000) (citations omitted).

15     Under California law, a party claiming waiver must show
16   evidence of an intent to waive a contractual term, which may
17   be demonstrated by the conduct of the parties.  Biren v.
18   Equality Emergency Medical Group, Inc., 102 Cal. App 4th 125,
19   141 (2002).  Plaintiffs argue that defendant's intent to waive
20   the "no oral modification" clause of the Franchise Agreement
21   is evidenced by the snack shop remodel that occurred in 2002,
22   wherein plaintiffs remodeled the snack shop and received rent
23   reimbursement for the remodel prior to memorializing the
24   remodel in writing.  Defendant argues that the snack shop
25   remodel was an anomaly, and points to the fact that the
26   agreement that memorializes the snack shop remodel
27   specifically states that plaintiffs agree "to make no
28   additional modification, improvements, or alterations to the

11

building or to other portions of the Station, . . . , without obtaining Conocophillips's prior written approval."[16]  In the face of this provision, I find that a reasonable jury could not conclude that defendant, by reimbursing plaintiffs for the 2002 remodel, intended to waive the "no oral modification" clause of the Franchise Agreement.

Plaintiffs also try to enforce the alleged oral modification by arguing that the car wash reimbursement agreement was an oral independent collateral contract.  In order to qualify as an independent collateral contract, the alleged collateral agreement must not qualify or be inconsistent with any of the terms of the written contract. Dobbins v. Horsfall, 58 Cal. App. 2d 23, 29 (1943); *see also* Malmstrom v. Kaiser Aluminum & Chemical Corp., 187 Cal. App. 3d 299, 318 (1986) (employee's alleged oral agreement whereby employer would fire him only for cause was inconsistent with written at-will agreement and therefore was not independent and collateral).  Here, an oral side agreement by the parties permitting remodeling of plaintiffs' service bays in exchange for rent reimbursement would have been at odds with a number of provisions of the Franchise Agreement and is therefore not independent and collateral.[17]

---

[16] The agreement also provides that "[e]xcept as modified herein, the [Franchise Agreement] and other related documents, and all of their terms and conditions, are unchanged and remain in effect."

[17] For example, such a side agreement would have conflicted with the rent provision, as well as the provision prohibiting any alterations or business changes to the station, structural or otherwise, without first obtaining the written consent of defendant.

12

Accordingly, defendants' motion for summary judgment as to plaintiffs' breach of contract claim is **GRANTED.**[18]

Defendant also seeks summary judgment as to plaintiffs' intentional and negligent misrepresentation claims, arguing that plaintiffs cannot show evidence that defendant made a knowingly false representation to plaintiffs or that plaintiffs justifiably relied on any oral representations made by defendant concerning the existence or applicability of any rent reimbursement programs.[19]

Plaintiffs contend that the false representations on which they rely were made by Vann in July 2003, not long after plaintiffs received the January 2003 letter from defendant that explained the existence of a new rent reimbursement

---

[18] Having found that the provision in the Franchise Agreement prohibits executory oral modifications, I need not reach the issues presented by defendants regarding the application of the parol evidence rule or the statute of frauds, nor do I reach the issue of whether the modification fails for uncertainty.

[19] Under California law, negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance by the claimant, and (5) damages. Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986); Small v. Fritz Companies, Inc., 30 Cal.4th 167, 173-174 (2003); 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts § 818, p. 1181. A claim for negligent misrepresentation does not require proof of knowledge of the falsity of the representation; an honest belief in the truth of the statement, without a reasonable ground for that belief, is sufficient. R & B Auto Center, Inc. v. Farmers Group, Inc., 140 Cal. App. 4th 327, 377 (2006). The elements of a cause of action for intentional misrepresentation are (1) a misrepresentation, (2) made with knowledge of its falsity, (3) intent to defraud or to induce reliance, (4) justifiable reliance, and (5) resulting damage. Charnay v. Cobert, 145 Cal. App. 4th 170, 184-185 (2006); Philipson & Simon v. Gulsvig, 154 Cal. App. 4th 347, 363 (2007).

13

program.  Assuming that Vann actually made all the representations asserted by plaintiffs, as I must do in considering defendant's request for summary judgment, I conclude that these statements were of a nature to give rise to an action for misrepresentation.

Plaintiffs submitted evidence that Vann represented to Davidson in 2003 that plaintiffs would be entitled to rent reimbursement if Davidson installed a car wash at the San Ramon station, but that Vann later testified at deposition that there was never a program in place that would have entitled plaintiffs to rent reimbursement for installing a car wash.  This evidence suggests that even though Vann knew that plaintiffs would never be entitled to rent reimbursement for installing a car wash, he nonetheless told Davidson that defendant had a reimbursement program that covered car wash installment expenses.[20]

Plaintiffs have also submitted evidence that Davidson's reliance on Vann's representations was justifiable.  Plaintiffs evidence shows that during the three years or so in which plaintiffs pursued their car wash installation project, Davidson received vague and imprecise information from defendant about whether there was a rent reimbursement program

---

[20] During the hearing, plaintiffs also argued that the evidence suggests that Vann may have concealed facts from plaintiffs.  Specifically, plaintiffs contend that while Vann may have been telling the truth in 2003 about the existence of a reimbursement program that covered car wash installations, Vann may not have informed plaintiffs when that program was cancelled, thereby allowing plaintiffs to continue to expend resources so that the San Ramon station would receive a car wash remodel at no cost to defendant.

14

1  in place that would cover the car wash project, and how to
2  proceed with the project to ensure that it fell within the
3  ambit of any such program.  Plaintiffs evidence also shows
4  that in 2002, the parties orally modified the Franchise
5  Agreement to allow plaintiffs to install a snack shop at the
6  San Ramon station, a modification that was fully executed by
7  both parties before it was memorialized in writing.  Given the
8  conduct of the parties over the years, a reasonable jury could
9  find that Davidson's reliance on Vann's statements and
10 defendant's conduct was justifiable.[21]

11     From the evidence submitted by plaintiff, I find that a
12 reasonable jury could conclude that plaintiffs were either
13 intentionally or negligently defrauded by defendant.
14 Accordingly, defendant's motion for summary judgment on

---

[21]   Defendant's argument that reliance on oral representations that contradict or vary the expressly integrated terms of a written agreement is unreasonable as a matter of law is unpersuasive.  Justifiable reliance is ordinarily a question of fact to be decided by a jury.  *See, e.g.*, Guido v. Koopman, 1 Cal. App. 4th 837, 842 (1991).  And the case law cited by defendant is readily distinguishable from the case at bar.  For example, in Dore v. Arnold Worldwide, Inc., 39 Cal. 4th 383, 393 (2006), the court noted that no oral representations were made to plaintiff by defendant, stating "[plaintiff] conceded in his deposition that no one at AWI specifically told him he would be employed there so long as his work was satisfactory or that he could be fired only for good cause."  Unlike the case at bar, Dore did not involve oral representations that conflicted with the terms of the contract signed by the plaintiff.  In short, neither of the cases cited by defendant involved a course of conduct, including past practice and oral representations, which makes them easily distinguishable.  Because reasonable minds could differ over whether Davidson's reliance on the various representations made by Vann and others was reasonable, even in the face of the renewal agreements that were silent on the issue of the car wash project, this claim is better suited for disposition by a jury.

plaintiff's misrepresentation claims is **DENIED**.[22]

Finally, defendant seeks summary adjudication on plaintiffs' UCL claim. Defendants argue, in part, that plaintiffs' UCL claim fails because plaintiffs cannot show that members of the public are likely to be deceived by any unlawful, unfair, or fraudulent practices. Plaintiffs argue that defendant has a "widespread practice" of requiring its California dealers to waive all state and federal claims and that it is "fair to presume" that the approximate 600 ConocoPhillips gas station dealers in California were required to sign an agreement like the Franchise Agreement in this case, which by virtue of the integration clause, required them to waive all claims against defendant in violation of section 2805(f) of the Petroleum Marketing Practices Act ("PMPA"). Plaintiffs have cited no authority for the proposition that the inclusion of an integration clause into an agreement governed by the PMPA is a *per se* violation. In fact, many courts have analyzed integration provisions in agreements governed by the PMPA and upheld their validity despite the fact that such clauses sometimes have the effect of excluding claims against franchisors. *See, e.g.*, Hazara Enter., Inc. v.

---

[22] In their opposition papers, plaintiffs request the Court to consider the doctrine of promissory estoppel pursuant to Cal. Civ. Code § 1698(d). Plaintiffs neither asserted this doctrine in their complaint nor argued why this doctrine is applicable at the hearing. The Court is not prepared to allow plaintiffs to plead this doctrine for the first time in response to defendant's motion, especially since plaintiffs' claim for negligent misrepresentation appears to provide them with a remedy similar to what a promissory estoppel claim provides.

1  Motiva Enter., LLC, 126 F. Supp. 2d 1365 (S.D. Fla. 2000);
2  Partner & Partner, Inc. v. ExxonMobil Oil Corp., No. 05-74499,
3  2008 U.S. Dist. LEXIS 25518, at *7 (E.D. Mich. March 31,
4  2008).  However, plaintiffs claim they need additional
5  discovery to support their UCL claim on different grounds.
6  Their motion for a Rule 56(f) continuance is **GRANTED**.
7  Defendant's motion for summary adjudication is **DENIED** as to
8  plaintiffs' UCL claim without prejudice.
9      Based on the foregoing, it is **ORDERED** that:
10     1.  Defendant's motion for summary adjudication as to
11 plaintiffs' breach of contract claim is **GRANTED**;
12     2.  Defendant's motion for summary adjudication as to
13 plaintiffs' negligent and intentional misrepresentation claims
14 is **DENIED**;
15     3.  Defendant's motion for summary adjudication as to
16 plaintiffs' Cal. Bus. & Prof Code claim is **DENIED** subject to
17 renewal after additional discovery has been taken by
18 plaintiffs.  Plaintiffs shall complete their discovery by
19 **August 17, 2009.**
20 Dated: July 10, 2009

_____
Bernard Zimmerman
United States Magistrate Judge

25 G:\BZALL\-BZCASES\DAVIDSON V. CONOCOPHILLIPS\MSJ Documents\ORDER ON MOT FOR SUMMARY JUDGMENT V.3.wpd